No. 24-7648

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MICHAEL KATZ-LACABE, et al.,

Plaintiffs-Appellees,

v.

ORACLE AMERICA, INC.,

Defendant-Appellee,

v.

SARAH FELDMAN,

Objector-Appellant.

On Appeal from the Northern District of California
Civil Action No. 22-cv-04792-RS

**APPELLANT'S OPENING BRIEF**

Kendrick Jan
Kendrick Jan, APC
225 Broadway, Suite 2220
San Diego, CA  92101
(619) 231-7702
kj@jan-law.com

John J. Pentz
Law Offices of John J. Pentz
13133 N. Vistoso Ranch Place
Oro Valley, AZ 85755
(978) 985-4668
jjpentz3@gmail.com

*Attorneys for Appellant Feldman*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ......................................................... ii

INTRODUCTION ...................................................................1

JURISDICTIONAL STATEMENT ...........................................1

STATEMENT OF ISSUES .......................................................2

STATUTORY AND REGULATORY AUTHORITIES ..........................2

STATEMENT OF THE CASE....................................................3

SUMMARY OF ARGUMENT ..................................................7

STANDARD OF REVIEW .......................................................9

      Standard of review – settlement approval .....................................9

      Standard of review – allocation of settlement funds ...................10

ARGUMENT .......................................................................11

A.    The district court failed to perform the required exploration of *Hanlon* and Rule 23(e) factors...................................................11

B.    The district court abused its discretion by approving a plan of allocation that does not correspond to the relative strength of Settlement Class Member claims .......................................................17

CONCLUSION.....................................................................21

CERTIFICATE OF COMPLIANCE.............................................22

ADDENDUM ........................................................... A-1–17

# TABLE OF AUTHORITIES

CASES

*Accord Ortiz v. Fibreboard Corp.*,
    527 U.S. 815, 857 (1999)...................................................................20

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ...............................................11

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...............................................11

*Deteresa v. Am Broad Cos*.,
    12 F.3d 460 (9th Cir. 1997) ..................................................19

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................*passim*

*In re Bluetooth Prod. Liab. Litig.*,
    654 F 3d 935 (9th Cir. 2011) ..................................................9

*In re Mego Financial Corp. Securities Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...............................................10

*In re Volkswagen "Clean Diesel" Marketing, Sales
Practices, and Products Liability Litigation,*
    895 F.3d 597 (9th Cir. 2018) ...............................................12

*Jabbari v. Farmer*,
    965 F.3d 1001 (9th Cir. 2020) .............................................18

*Murray v. Grocery Delivery E-Services USA Inc.,*
    55 F.4th 340 (1st Cir. 2022) .................................................20

ii

*Officers for Justice v. Civil Service Com'n of City
and County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ................................................................16

*Saucillo v. Peck*,
    25 4th 1118 (9th Cir. 2022).................................................................9

*Six Mexican Workers v. Arizona Citrus Growers*,
    697 F.2d 1333 (9th Cir. 1990)..............................................................10

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) .......................................................*passim*

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ..............................................................10

STATUTES

Electronic Communications Privacy Act Stored Communications Act,
    18 U.S.C. § 2510...............................................................................1

28 U.S.C. § 1291 ..................................................................................2

28 U.S.C. §1331 ..................................................................................1

28 U.S.C. §1332(d) ..............................................................................2

Rule 23(e).....................................................................2, 11, 17, 21

Rule 23(e)(2)(C)(i)......................................................11, 12, 13, 17

Rule 23(e)(2)(D) ...........................................................20, 21

OTHER

*Procedural Guidance for Class Action Settlements* ...............................12

# INTRODUCTION

This class action was filed against Oracle America, Inc. ("Oracle") on behalf of five potential classes whose members' personal information, or data derived from the personal information, was impermissibly acquired, captured, or otherwise collected by defendant Oracle. By the time of settlement, the only surviving damages claims were those state-specific common law and statutory claims belonging exclusively to California and Florida residents. Class members who reside outside of those two states had no surviving damages claims.

The settlement consists of a $115 million payment to be divided pro rata among a *nationwide* Settlement Class whose non-California and non-Florida members have no viable damage claims in this action.

This appeal challenges the district court's failure to perform a *Hanlon* factor analysis – including a *Wakefield* analysis if applicable – to justify the settlement amount and the Settlement's allocation of identical recovery amounts to class members regardless of whether their claims have been dismissed.

# JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction in this matter pursuant to 28 U.S.C. §1331 because plaintiffs allege defendant Oracle violated the Electronic Communications Privacy Act Stored Communications Act, 18 U.S.C. § 2510, *et seq.* The district court also had diversity jurisdiction over the state claims alleged in this

1

action under 28 U.S.C. §1332(d) because the suit is a class action in which the citizenship of one or more plaintiffs differs from that of the defendant and the aggregate amount in controversy exceeds $5,000,000.

Consistent with 28 U.S.C. § 1291, this Court has appellate jurisdiction because this is an appeal following entry of the district court's November 15, 2024 Final Approval Order and Judgment. ER-3. Appellant Sarah Feldman, objector below, timely filed her Notice of Appeal on December 12, 2024. ER-177.

## STATEMENT OF ISSUES

1.      Did the district court abuse its discretion by failing to show it performed a comprehensive *Hanlon* factor and Rule 23(e) analysis, including a *Wakefield* due process analysis if applicable, prior to granting approval of the proposed settlement?

2.      Did the district court abuse its discretion by approving a plan of allocation that fails to recognize the stronger claims of California Class members and instead values all Settlement Class Member claims uniformly?

## STATUTORY AND REGULATORY AUTHORITIES

Statutes and Rules are set forth in an Addendum following the brief.

2

## STATEMENT OF THE CASE

Plaintiffs filed this class action lawsuit against defendant Oracle on August 19, 2022, alleging that Oracle collects as many types of personal information from internet users as possible, synchronizes that data to create individual profiles on internet users, and then monetizes those profiles by selling them, all without adequate consent from the subjects of those profiles.  ER-154.

Plaintiffs' original Complaint was brought on behalf of five different potential classes of plaintiffs: a Worldwide Class, a United States Sub-Class, a California Sub-Class, a CIPA Sub-Class, and an ECPA Class.  ER-157–158.  On behalf of these classes, the Complaint alleges seven causes of action:

> "(1) Invasion of Privacy under the California Constitution (for the California Sub-Class); (2) Intrusion Upon Seclusion under California Common Law (on behalf of all classes); (3) Violation of the Unfair Competition Law under Cal. Bus. & Prof Code § 17200 *et seq.* (on behalf of all classes); (4) Violation of the California Invasion of Privacy Act (on behalf of the CIPA Sub-Class); (5) Violation of the Federal Wiretap Act, under 18 U.S.C. § 2510; (6) Unjust Enrichment (on behalf of all classes); and (7) Declaratory Judgment and Injunctive Relief (on behalf of all classes)."

ER-158.

On April 6, 2023, the district court granted Oracle's first motion to dismiss the claims of the Worldwide Class (for lack of jurisdiction), the California UCL claim (for lack of allegations stating a specific monetary or economic loss), the Federal Wiretap Act claim (based on the complete defense of one-party consent),

and the unjust enrichment claim (for failure to demonstrate that Oracle unjustly retained a benefit at plaintiffs' expense).

The district court held the Florida Plaintiff's claims are governed by Florida law, not California law, and that Florida law construes the tort of intrusion upon seclusion more narrowly than California and many other states.[1]  Accordingly, the court held "the intrusion upon seclusion claim (applying California common law) for Plaintiffs' nationwide and global classes cannot stand."  ER-174.

Following the district court's order on Oracle's motion to dismiss, Plaintiffs filed a First Amended Class Action Complaint ("FAC") on May 22, 2023, in which they added claims under Florida common and statutory law on behalf of the Florida Class and re-alleged Federal Wiretap Claims on behalf of a nationwide class.  In response, Oracle filed its second motion to dismiss.

In ruling on Oracle's motion to dismiss the FAC, the district court once again dismissed the Federal Wiretap Claim, as well as the Florida Class's intrusion on seclusion claim.  The court, however, allowed the Florida Security of Communications Act ("FSCA") claim to proceed on behalf of the Florida Class.  Further, the district

---

[1] "'California's interest in applying its law to residents of foreign state is attenuated,' particularly where 'the claims of foreign residents concern [] acts that took place in other states.'"  (Internal cites omitted.)  ER-172.  "In light of this and the apparent differences in the legal framework among states, Plaintiffs have failed to show that the law of California should be applied nationwide."  *Id*.

court once again held that California's intrusion upon seclusion law applies only to California residents.

Plaintiffs filed a Second Amended Class Action Complaint ("SAC") on November 17, 2023, in which they re-alleged the Federal Wiretap Act claim and the Florida intrusion on seclusion claim. On April 3, 2024, the court granted Oracle's motion to dismiss both of those claims. Regarding the Wiretap claim the court found Oracle had no tortious intent in collecting the data, but instead intended merely to make money. Regarding the Florida intrusion upon seclusion claim, the court again found that Oracle had not invaded any "private place" as required by the Florida law.

After the court's third dismissal of the Federal Wiretap Act claim, Plaintiffs filed a motion for interlocutory appeal, which Oracle opposed, and which was never granted.

Consistent with the district court's April 3, 2024 ruling on Oracle's third motion to dismiss, at the time the parties entered the Settlement Agreement on July 8, 2024, only the following claims were preserved under the SAC:

California Class: The following California Class causes survived Oracle's three motions to dismiss: invasion of privacy, intrusion upon seclusion, unjust enrichment, and violation of California Invasion of Privacy Act – all arising under California law.

Florida Class:  The following Florida Class causes survived Oracle's three motions to dismiss:  unjust enrichment and violation of the Florida Security of Communications Act – both arising under Florida law.

Nationwide Class:  No viable damages claim survived in favor of the nationwide class.  The only damages cause stated in the SAC on behalf of a nationwide class was the ECPA claim, which the district court dismissed three times, the third time with prejudice.

On July 18, 2024, the parties filed a joint motion for preliminary approval of the settlement, which provides for a payment of $115 million to be distributed pro rata to members of a nationwide Settlement Class who file a claim.  Class members who reside in states that have neither a class representative nor a viable cause of action will receive as much as Class members who reside in California who exclusively possess valuable and viable claims arising under California law.  After a hearing, the district court granted preliminary approval to the settlement on August 9, 2024.

Appellant Sarah Feldman, a California Class member, timely filed an objection to the proposed settlement and distribution plan.  ER-47.

Following the November 14, 2024 final approval hearing, the court, on November 15, 2025, issued its Final Approval Order and Judgment overruling all objections and granting final approval to the settlement and the distribution plan.

6

Appellant Sarah Feldman timely filed her notice of appeal on December 13, 2024.

## SUMMARY OF ARGUMENT

In the Ninth Circuit a district court must, in both its preliminary and final approval order, show it has comprehensively explored all relevant Rule 23(e) and *Hanlon* factors. The district court failed to do so.

Nowhere in its order does the district court state the potential recovery for *any* claim, let alone each one, were the Class to prevail on each of Oracle's defenses. Neither does the court justify the settlement's discount against each claim according to Oracle's alleged defenses and other risks, including the possibility of due process adjustment of aggregated statutory damages. There is no discussion of how the $115 million settlement figure adequately compensates Class claims in view of Oracle's potential defenses or other risks of litigation, trial, and/or appeal.

If a district court regards aggregated statutory damages as being subject to constitutional limitation – a form of litigation risk – and allows for a due process adjustment of statutory damages to justify a proposed compromise of available statutory damages, the district court must consider the magnitude of the aggregated damages in relation to the statute's goals of compensation, deterrence and punishment, and to the proscribed conduct.

Class Counsel's motion for preliminary approval relies heavily on litigation risk, including a risk of a *Wakefield* due process adjustment, to justify the discount of statutory damages contemplated by the settlement. The district court's preliminary order, however, fails even to mention *Wakefield.*

Without a showing it has made a thorough *Hanlon* factor and Rule 23(e) analysis, including a discussion of all applicable litigation, trial, and appeal risks, the district court's final approval of the proposed settlement cannot survive appellate review. It is not sufficient for the district court to state in conclusory fashion that a settlement satisfies the *Hanlon* factors, or worse, that class counsel has represented that they *believe* the settlement passes muster under *Hanlon*. The court must show on paper that it has analyzed each applicable *Hanlon* factor and describe how each justifies an adjustment of potential damages for each claim. That showing is entirely lacking here.

At the time of settlement, only two sub-Classes had viable claims stated in the controlling SAC – the California Class, the definition of which included only "natural persons located in California" and the Florida Class, the definition of which included only "natural persons located in Florida." These sub-Classes each possessed separate and distinct claims. If the case had been tried, damages would have been based on the claims of the California and Florida Classes, only.

8

The settlement, however, expands the Settlement Class definition to a nationwide class, and offers each Settlement Class Member the same pro rata recovery, even though the only claim alleged by residents of states other than California and Florida was the ECPA claim, which had been dismissed three times.

The unwarranted expansion of the Settlement Class to include persons whose only claim had been dismissed improperly dilutes the recoveries of the California Class members and Florida Class members whose claims created the settlement value. The non-California-and-Florida Settlement Class Members had at most a frivolous appeal of the dismissal of the ECPA claim, and, while this Court's law permits them to be included in the Settlement Class for purposes of dismissing their claims, it does not permit their claims to be compensated at the same level as those Class members who had viable claims headed to trial which leveraged the settlement of this case.

## STANDARD OF REVIEW

**Standard of review – settlement approval:** A district court's decision to approve a class action settlement is reviewed for abuse of discretion. *See Saucillo v. Peck*, 25 4th 1118, 1129 (9th Cir. 2022). *In re Bluetooth Prod. Liab. Litig.*, 654 F 3d 935, 940 (9th Cir. 2011). The award of statutory damages is likewise reviewed for an abuse of discretion. *See Six Mexican Workers v. Arizona Citrus Growers*, 697 F.2d 1333, 1339-40 (9th Cir. 1990). Whether the district court applied the correct

legal standard is reviewed *de novo*. *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010). Because this case involves the novel application of *Wakefield*'s new due process standards, this issue is before the Court *de novo*. "Settlements that take place prior to formal class certification require a higher standard of fairness." *In re Mego Financial Corp. Securities Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

**Standard of review – allocation of settlement funds:** In this Circuit, the standard of review for an appeal challenging the allocation of settlement funds is for abuse of discretion. *In re Mego Financial Corp. Securities Litigation,* 213 F.3d 454, 460 (9th Cir. 2000) ("The district court's approval of an allocation plan for a settlement in a class action is reviewed for an abuse of discretion.")

# ARGUMENT

**A.  The district court failed to perform the required exploration of *Hanlon* and Rule 23(e) factors**

The district court failed to show it performed the comprehensive exploration of the *Hanlon*[2] and Rule 23(e)[3] factors required for settlement approval.  In the Ninth Circuit, district courts are held "to a higher *procedural* standard[4] when making that determination of substantive fairness: 'To survive appellate review, the district court must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections.'" (Internal citations omitted.)  *Allen v. Bedolla,* 787 F.3d 1218, 1223–24 (9th Cir. 2015).  This showing of a comprehensive exploration of all factors is a procedural requirement, though one with obvious

---

[2] The *Hanlon* factors, also known as the *Churchill* or *Staton* factors, to be considered by the district court, include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

[3] Of principal concern to this appeal is Rule 23(e)(2)(C)(i)'s requirement that the district court consider whether the "relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal."  Addendum, p. A-13.

[4] "That procedural burden is more strict when a settlement is negotiated absent class certification."  *Allen v. Bedolla,* 787 F.3d 1218, 1224 (9th Cir. 2015).  As is here the case.

substantive consequences. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 895 F.3d 597, 612–613 (9th Cir. 2018) ("That 'procedural burden' on the district court helps to ensure the substantive fairness of the settlement.").

In their Unopposed Motion for Preliminary Approval of Class Action Settlement,[5] Class Counsel cited to *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) to justify the extreme discount of the CIPA claims:

> "Had Plaintiff's CIPA claim proceeded to trial, Oracle would have been exposed to statutory damages of $5,000 per violation for nearly every person in California. While the potential recovery on such massive aggregated statutory damages would be enormous (likely over a billion dollars), [6] it could face challenges reducing recovery. *Wakefield v. Vi Salus, Inc.*, 51 F.4th 1109, 1121 ('[A]ggregated statutory damages awards are, in certain extreme circumstances, subject to constitutional due process limitations.')." (Internal citation omitted.)"

ER-93–94

---

[5] The procedural guidelines of the Northern District of California obligate Class Counsel to provide the district court with "the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims." *Procedural Guidance for Class Action Settlements*, Addendum, p. A-2. In their motions for preliminary and final approval, Class Counsel failed to comply with the Northern District's published guidelines, including without limitation that they state the potential recovery if plaintiffs had fully prevailed on their CIPA and FSCA claims, and provide a thorough analysis of Rule 23(e)(2)(C)(i) and *Hanlon* factors – including *Wakefield* due process adjustments – justifying discounts for litigation, trial, and appellate risks.

[6] Class Counsel's math is way too conservative. In 2022, the California population was over 39,000,000, putting the potential recovery closer to $100 billion.

*Wakefield*'s due process limitations are matters for consideration under *Hanlon*'s risk of litigation factor and Rule 23(e)(2)(C)(i)'s "risk of trial and appeal." Yet the district court never mentions *Wakefield* or any of its due process limitations.

In its Order Granting Preliminary Approval, the district court states only that "the Settlement Agreement substantially fulfills the purposes and objective of the class action and provides substantial relief to the Settlement Class without the risks, burdens, costs, or delay associated with continued litigations, trial, and/or appeal." ER-65. The order has no further discussion of risk of litigation, trial, or appeal.

In Plaintiffs' Motion for Final Approval of Class Action Settlement, under the heading *Rule 23(e)(2)(C)(i): Costs, risks, and delay from trial and appeal*, Class Counsel state:

> "This is a novel case, predicated on the innovative application of legal theories and privacy rights against a defendant with substantial resources to mount a vigorous defense. Success at class certification, summary judgment, trial, and on appeal is far from certain. While the Court maintained certain claims at the pleading stage, it made clear that "some [had] barely [survived]." Dkt. 49 at 23. Trial presented not only the usual risks, but also Oracle's cessation of its advertising business may add difficulty to obtain testimony from key witnesses."

ER-27.

They further posited that "courts recognize that CIPA's high statutory damages, awarded on a 'per violation' basis, may face a 'significant risk of diminished recovery' should it be found constitutionally excessive," thereby

invoking *Wakefield*.  ER-32.  Class Counsel provides no other discussion of litigation, trial, or appeal risks in their Motion for Final Approval.

In its Final Approval Order and Judgment, the district court's discussion of risks of litigation and the discount of potential damages is limited to the following:

> "The Settlement provides meaningful relief to the Settlement Class given the range of reasonable possible recoveries by the Settlement Class Members, especially since further litigation would likely be complex, expensive, lengthy, and risky."

ER-8.

> "These objections do not adequately account for the risks and delays involved in further litigation" and made "no effort to assess the risks of class certification, summary judgment, or trial for CIPA claims that this Court found 'barely' survived dismissal.  Dkt. 49 at 23."[7]

ER-8.

These are the district court's only comments mentioning litigation risk made in its Final Approval Order.[8]

---

[7] While the district court finds that objectors "do not adequately account for risks" and make "no effort to assess the risks," the court itself makes no accounting or assessment of the risks of litigation, trial, or appeal.

[8] In its Final Approval Order, the district court did discuss the "strengths and weaknesses of the claims asserted" and "Class Counsel and the Court have carefully evaluated those strengths and weaknesses."  ER-8.  Remarkably, the court's only citation for this conclusion is to the Preliminary Approval's finding that the settlement "provides substantial relief to the Settlement Class without the risks, burdens, costs, or delay associated with continued litigations, trial, and/or appeal." ER-65.

14

Nothing in either its Order Granting Preliminary Approval or its Final Approval Order and Judgment, shows the district court has comprehensively explored the risk of litigation, trial, or appeal factor(s).

The risk presented by the prospect of a *Wakefield* due process adjustment of an award of aggregated statutory damages – though mentioned by Class Counsel and generally referred to by the district court – is never explored or explained by the district court. It is reasonable to assume the risk of a *Wakefield* adjustment played into the district court's approval of a recovery 1/2,000th of available individual FSCA statutory damages and only 1/10,000th of available individual CIPA statutory damages, as so great an adjustment exceeds that attributable to the risk of losing the case at trial.

The district court was required to show it has explored *Wakefield*'s four-factor test according to which aggregated statutory damages may be subjected to constitutional limitation only if the award is excessive "in relation to the statute's goals of compensation, deterrence, and punishment and to the proscribed conduct." *Wakefield v. ViSalus, Inc.* 51 F.4th 1109, 1123 (9th Cir. 2022). Here, the district court failed to do so.

This procedural failing arises time and again in class actions in this Circuit that involve settlement of aggregated statutory damage claims. The issue is not

15

whether the settlement amount appears "meaningful,"[9] and the fundamental procedural failure is not excused simply because the parties' negotiations were extensive, arm's length, and guided by experienced mediators or because the district court knows the case and made its determination based on its own "amalgam of delicate balancing, gross approximations and rough justice." *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). The concern, rather, is that the district court show it has comprehensively explored the relevant factors in reaching its determination to approve a proposed settlement and not simply relied on the parties' negotiations, a mediator's work, Class Counsel's recommendations, or its gestalt sense of the case. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621 (1997) ("the standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kind—class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness.")

This Court's attention is necessary to enforce the district court's procedural obligation to show it has performed a comprehensive exploration of the *Hanlon* litigation risk factor and the Rule 23(e)(2)(C)(i) risks of trial and appeal factor, and

---

[9] This term, employed by the district court in its Final Approval Order (see ER-8), does not appear anywhere in *Hanlon*, Rule 23, or Ninth Circuit jurisprudence. It is a meaningless term that does not advance the process of evaluating a settlement's fairness and adequacy. Indeed, as a practical matter, it is difficult to see how a payment of 50 cents is meaningful to anyone.

to provide guidance regarding application of *Wakefield*'s due process test in circumstances that suggest a risk of constitutionally excessive aggregated statutory damages.

Appellant does not ask this Court to take a position on the substantive fairness of the agreement, but instead to reverse and remand to give the district court a further opportunity to properly perform the required exploration of Rule 23(e) and *Hanlon* factors.

## B. The district court abused its discretion by approving a plan of allocation that does not correspond to the relative strength of Settlement Class Member claims

The valuable statutory claims possessed by the California Class and Florida Class created the leverage for negotiation of the proposed settlement,[10] and consequently the California and Florida Classes should receive all or most of the settlement proceeds.[11]

Class Plaintiffs Katz-Lacabe and Golbeck are, respectively, members of the California and Florida Classes.  Plaintiffs and Class Counsel owe the California and Florida Classes a duty to maximize their recoveries in this case.  Yet Class Plaintiffs

---

[10] At settlement, only the California Class and the Florida Class had surviving causes of action stated in the SAC.  The claim(s) of the nationwide Class had several months earlier been dismissed with prejudice by the district court.

[11] Even if the entire $115 million were paid to the California Class, however, the gross recovery would only be approximately $5 per California Subclass member or 1/10 of one percent of available individual statutory damages.

17

and Class Counsel traded the valuable claims of the California and Florida Classes for a settlement agreement that lumps the California and Florida Classes into a nationwide Settlement Class, thereby diluting recoveries to only 50 cents.[12]

Class Counsel violated their fiduciary duty to their California Class and Florida Class clients by improperly sharing the recovery value created by claims of the California and Florida Classes with persons who have an interest only in declaratory and/or injunctive relief. The expansion of the right to make a claim against the Settlement Fund to include Settlement Class Members with an interest only in declaratory/injunctive relief is a breach of fiduciary duty that works to the detriment of the California and Florida Classes and should not be approved.

While an appeal of the dismissal of the ECPA claim may technically permit the inclusion of the claims of residents of the other forty-eight states in the Settlement Class, *see Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020), that possibility does not justify the compensation of those residents at the same rate as members of the California and Florida Classes whose claims survived three motions to dismiss.[13] California and Florida Class members have viable claims that were

---

[12] Of course, the $10,000 incentive award granted to each Plaintiff rendered them indifferent to the paltry Class recovery.

[13] The ECPA claim was dismissed three separate times, the last time with prejudice because "amendment would be futile." A motion for leave to file a frivolous interlocutory appeal should not permit losers in a class action to appropriate a settlement fund created by the claims of others.

headed to trial.  All other nationwide Settlement Class members have at best a long-shot appeal of the dismissal of their ECPA claim that is foreclosed by Ninth Circuit law.  *See Deteresa v. Am Broad Cos*., 12 F.3d 460 (9th Cir. 1997).  The ECPA is a one-party consent statute, which means Oracle's customers' consent to have Oracle tools on their websites is a complete defense to Plaintiff's ECPA claims.   Plaintiff's only way around this defense was to invoke the crime-tort exception, which requires a showing that Oracle's *primary purpose* in selling web-based tools to websites was to injure Plaintiffs, not to make money.[14]  That argument is so lacking in merit that the motion for interlocutory appeal of the dismissal of the ECPA claim does not restore any value to those claims, but merely preserves the parties' ability to dismiss those claims for no compensation in the settlement.

---

[14] As Oracle argued in its Opposition to interlocutory appeal, "on April 3, 2024, the Court dismissed Plaintiffs' ECPA claim for a third time.  As in its two prior Orders, the Court based its dismissal on Plaintiffs' failure to allege that Oracle acted with the tortious purpose required to apply ECPA's crime-tort exception to the statute's one-party consent rule… Plaintiffs also fail to show a substantial ground for difference of opinion.  Courts will find a substantial ground for difference of opinion where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point… But, the Ninth Circuit has addressed this exact issue in *Deteresa* and clearly adopted the former 'subjective intent' standard…" ER-114 – 117.

It is inequitable[15] to treat all nationwide Settlement Class Members equally in the allocation of benefits, because California Class members and Florida Class members possess significantly more valuable claims. "Significant differences in contested claims or defenses have the potential to cause significant differences in claim value, which should be reflected in any fair settlement. … 'An agreement that gives the same monetary remedy to all members of the class, despite significant differences in the nature of their claims … may not be fair and reasonable.'" *Murray v. Grocery Delivery E-Services USA Inc.,* 55 F.4th 340,346 (1st Cir. 2022). *Accord Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857 (1999) ("The very decision to treat them all the same is itself an allocation decision with results almost certainly different from the results that those [with strongest claims] would have chosen."). The settlement's equal apportionment of compensation across Settlement Class Members from all fifty states violates Rule 23(e)(2)(D), as California and Florida Class members have vastly stronger claims ready for trial, and the rest have only a pending motion for leave to file a worthless appeal.

The broad nationwide Settlement Class release was purchased with the valuable claims of the California and Florida Classes. Appellants ask this Court to

---

[15] Rule 23(e)(2)(D) requires that a settlement treat "class members equitably relative to each other." Addendum, p. A-13.

reverse the plan of allocation and remand for treatment consistent with Rule 23(e)(2)(D) according to the relative strength of Settlement Class Member claims.

## CONCLUSION

For the foregoing reasons, Appellant prays this Court reverse the district court's settlement approval and remand for a proper comprehensive *Hanlon* factor and Rule 23(e) analysis of whether the settlement of fifty cents per Settlement Class Member is fair, reasonable, and adequate compensation for the claims that have survived Oracle's motions to dismiss. If this Court affirms the settlement, Appellant asks the Court to reverse the district court's approval of the settlement's plan of allocation and remand with instructions to compensate the claims of California Class members and Florida Class members at a higher rate than the claims of Settlement Class Members from the other forty-eight states.

Respectfully submitted,

Sarah Feldman by her attorneys,

*s/ Kendrick Jan*
Kendrick Jan
Kendrick Jan, APC
225 Broadway, Suite 2220
San Diego, CA 92101

*s/ John J. Pentz*
John J. Pentz, Esq.,
13133 N. Vistoso Ranch Place
Oro Valley, AZ 85755

21

# <u>CERTIFICATE OF COMPLIANCE</u>

**9th Cir. Case No: 24-7648**


I am the attorney or self-represented party.

**This brief contains 4,794 words,** excluding the items exempted by Fed. R. App. P. 32(f).  The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).  (Note:  This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.)

I certify this brief complies with the length limit set forth in Cir. R. 32-1(a).


Signature:  <u>  s/John Pentz          </u>          Date: 04/05/2025

*Michael Katz-Lacabe, et al. v. Oracle America, Inc., v. Sarah Feldman*
Case No. 24-7648

### ADDENDUM TO APPELLANT'S OPENING BRIEF

Statutes and Rules

### INDEX

Index ........................................................................................... A-1

Procedural Guidance for Class Action Settlements
    N.D. Cal. ............................................................................... A-2–6

Federal Rules of Civil Procedure
    Rule 23 ................................................................................... A-7–17

A-1

## Procedural Guidance for Class Action Settlements

*Published November 1, 2018; modified December 5, 2018 and August 4, 2022*

> *NOTE: Even though the guidance is highly recommended, the parties must comply in the first instance with the specific orders of the presiding judge.*

Parties submitting class action settlements for preliminary and final approval in the Northern District of California should review and follow these guidelines to the extent they do not conflict with a specific judicial order in an individual case. Failure to address the issues discussed below may result in unnecessary delay or denial of approval. Parties and mediators should consider this guidance during settlement negotiations and when drafting settlement agreements and exhibits, including class notices. In cases litigated under the Private Securities Litigation Reform Act of 1995 and the Fair Labor Standards Act, follow the statute and case law requirements that apply to such cases, such as regarding reasonable costs and expenses awards to representative plaintiffs, and this procedural guidance to the extent applicable.

## Preliminary Approval

1) INFORMATION ABOUT THE SETTLEMENT—The motion for preliminary approval should state, where applicable:

   a. Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.

   b. Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.

   c. The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.

   d. Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state.

   e. The proposed allocation plan for the settlement fund.

   f. If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.

   g. In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.

2) SETTLEMENT ADMINISTRATION—The parties are expected to get multiple competing bids from potential settlement administrators. In the motion for preliminary approval, the parties should:

   a. Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years.

b. Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs.

The court may not approve the amount of the cost award to the settlement administrator until the final approval hearing. The Court encourages the parties to address the items listed in the checklist linked here in formulating their response.

3)    NOTICE—The parties should ensure that the class notice is easily understandable, in light of the class members' communication patterns, education levels, and language needs. The notice should include the following information:

a. Contact information for class counsel to answer questions.

b. The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case.

c. Instructions on how to access the case docket via PACER or in person at any of the court's locations.

d. The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class.

e. A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed.

The parties should explain how the notice distribution plan is effective. Class counsel should consider the following ways to increase notice to class members: identification of potential class members through third-party data sources; use of text messages and social media to provide notice to class members; hiring a marketing specialist; providing a settlement website that estimates claim amounts for each specific class member and updating the website periodically to provide accurate claim amounts based on the number of participating class members; and distributions to class members via direct deposit.

The notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2). If U.S. mail is part of the notice distribution plan, the notice envelope should be designed to enhance the chance that it will be opened.

Below is suggested language for inclusion in class notices:

This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www._____.com, by contacting class counsel at _____, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, [insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

4)    OPT-OUTS—The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information or hurdles. The notice should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out.

5)    OBJECTIONS—Objections must comply with Federal Rule of Civil Procedure 23(e)(5). The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections.

A-3

Below is suggested language for inclusion in class notices:

"You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number ( _____ v. _____, Case No. _____), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, [insert appropriate Court location here], and (c) be filed or postmarked on or before _____."

6)    ATTORNEYS' FEES AND COSTS—Although attorneys' fee requests will not be approved until the final approval hearing, class counsel should include information about the fees and costs (including expert fees) they intend to request, their lodestar calculation (including total hours), and resulting multiplier in the motion for preliminary approval. In a common fund case, the parties should include information about the relationship between the amount of the common fund, the requested fee, and the lodestar. To the extent counsel base their fee request on having obtained injunctive relief and/or other non-monetary relief for the class, counsel should discuss the benefit conferred on the class.

7)    SERVICE AWARDS—Judges in this district have different perspectives on extra payments to named plaintiffs or class representatives that are not made available to other class members. Counsel seeking approval of service awards should consult relevant prior orders by the judge reviewing the request. Although service award requests will not be approved until the final approval hearing, the parties should include information about the service awards they intend to request as well as a summary of the evidence supporting the awards in the motion for preliminary approval. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class representatives. In general, unused funds allocated to incentive awards should be distributed to the class pro rata or awarded to cy pres recipients.

8)    CY PRES AWARDEES—If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members' claims. The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. In general, unused funds allocated to attorneys' fees, service awards, settlement administration costs, and class member payments should be distributed to the class pro rata if feasible, or else awarded to cy pres recipients or to the relevant government authorities.

9)    TIMELINE—The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs.

10)    CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS—The parties should address whether CAFA notice is required and, if so, when it will be given. In addition, the parties should address substantive compliance with CAFA. For example, if the settlement includes coupons, the parties should explain how the settlement complies with 28 U.S.C. § 1712. In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA).

11)    COMPARABLE OUTCOMES—Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes.  Lead class counsel should provide the following information for as many as feasible (and at least one) comparable class settlements (i.e., settlements involving the same or similar claims, parties, issues):

   a. The claims being released, the total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to cy pres recipients, the administrative costs, the attorneys' fees and costs, the total exposure if the plaintiffs had prevailed on every claim.

   b. Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests.

A-4

c. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.

Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases, supported by analysis in the text of the motion.

12)   ELECTRONIC VERSIONS—Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices should be submitted to the presiding judge's Proposed Order (PO) email address when filed. Most judges in this district use Microsoft Word, but counsel should check with the individual judge's Courtroom Deputy.

13)   OVERLAPPING CASES—Within one day of filing of the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement.

## Final Approval

1)   CLASS MEMBERS' RESPONSE—The motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who opted out, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections.

2)   ATTORNEYS' FEES—All requests for approval of attorneys' fees must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund. Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed. Counsel should be prepared to submit copies of detailed billing records if the court orders.

Regardless of when they are filed, requests for attorneys' fees must be noticed for the same date as the final approval hearing. If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions. The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval.

3)   SERVICE AWARDS—All requests for service awards must be supported by evidence of the value provided by the proposed awardees, the risks they undertook in participating, the time they spent on the litigation, and any other justifications for the awards.

4)   ELECTRONIC VERSIONS—Electronic versions (Microsoft Word or Word Perfect) of all proposed orders and judgments should be submitted to the presiding judge's Proposed Order (PO) email address at the time they are filed.

## Post-Distribution Accounting

1)   Within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to class members, cy pres beneficiaries, and others pursuant to the settlement agreement), the parties should file a Post-Distribution Accounting (and post it on the settlement website), which provides the following information:

   a. The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average, median, maximum, and minimum recovery per claimant, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, plaintiffs' counsel's updated lodestar total, and the lodestar multiplier.

   b. Where class members are entitled to non-monetary relief, such as discount coupons, debit cards, or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests.

   c. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.

A-5

Counsel should summarize this information in an easy–to–read chart that allows for quick comparisons with other cases.

3) The Court may hold a hearing following submission of the parties' Post–Distribution Accounting.

A-6

| United States Code Annotated |
| :--- |
| Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos) |
| Title IV. Parties |

## Federal Rules of Civil Procedure Rule 23

### Rule 23. Class Actions [Rule Text & Notes of Decisions subdivisions I to VII]

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 23 are displayed in multiple documents. >

**(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

   **(1)** the class is so numerous that joinder of all members is impracticable;

   **(2)** there are questions of law or fact common to the class;

   **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

   **(4)** the representative parties will fairly and adequately protect the interests of the class.

A-7

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

**(1)** prosecuting separate actions by or against individual class members would create a risk of:

**(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

**(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)** the desirability or undesirability of concentrating the litigation of the claims in the

A-8

particular forum; and

**(D)** the likely difficulties in managing a class action.

**(c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.**

**(1)** *Certification Order.*

**(A)** *Time to Issue.* At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

**(B)** *Defining the Class; Appointing Class Counsel.* An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).

**(C)** *Altering or Amending the Order.* An order that grants or denies class certification may be altered or amended before final judgment.

**(2)** *Notice.*

**(A)** *For (b)(1) or (b)(2) Classes.* For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.

**(B)** *For (b)(3) Classes.* For any class certified under Rule 23(b)(3)--or upon ordering notice

under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)--the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

**(i)** the nature of the action;

**(ii)** the definition of the class certified;

**(iii)** the class claims, issues, or defenses;

**(iv)** that a class member may enter an appearance through an attorney if the member so desires;

**(v)** that the court will exclude from the class any member who requests exclusion;

**(vi)** the time and manner for requesting exclusion; and

**(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

**(3)** *Judgment.* Whether or not favorable to the class, the judgment in a class action must:

**(A)** for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom

the court finds to be class members; and

**(B)** for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

**(4) *Particular Issues.*** When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

**(5) *Subclasses.*** When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.

**(d) Conducting the Action.**

**(1) *In General.*** In conducting an action under this rule, the court may issue orders that:

**(A)** determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

**(B)** require--to protect class members and fairly conduct the action--giving appropriate notice to some or all class members of:

**(i)** any step in the action;

**(ii)** the proposed extent of the judgment; or

   **(iii)** the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;

  **(C)** impose conditions on the representative parties or on intervenors;

  **(D)** require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

  **(E)** deal with similar procedural matters.

 **(2)** *Combining and Amending Orders.* An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.

**(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

 **(1)** *Notice to the Class.*

  **(A)** *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

**(B)** *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

**(i)** approve the proposal under Rule 23(e)(2); and

**(ii)** certify the class for purposes of judgment on the proposal.

**(2)** *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

**(i)** the costs, risks, and delay of trial and appeal;

**(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

**(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.                    7

A-13

**(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

**(3)** *Identifying Agreements.* The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

**(4)** *New Opportunity to be Excluded.* If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

**(5)** *Class-Member Objections.*

**(A)** *In General*. Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.

**(B)** *Court Approval Required for Payment in Connection with an Objection*. Unless approved by the court after a hearing, no payment or other consideration may be provided in connection with:

**(i)** forgoing or withdrawing an objection, or

**(ii)** forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal.

**(C)** *Procedure for Approval After an Appeal.* If approval under Rule 23(e)(5)(B) has not been obtained before an appeal is docketed in the court of appeals, the procedure of Rule 62.1 applies while the appeal remains pending.

**(f) Appeals.** A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A party must file a petition for permission to appeal with the circuit clerk within 14 days after the order is entered, or within 45 days after the order is entered if any party is the United States, a United States agency, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

**(g) Class Counsel.**

**(1)** *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

**(A)** must consider:

**(i)** the work counsel has done in identifying or investigating potential claims in the action;

**(ii)** counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

**(iii)** counsel's knowledge of the applicable law; and

**(iv)** the resources that counsel will commit to representing the class;

**(B)** may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

**(C)** may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

**(D)** may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

**(E)** may make further orders in connection with the appointment.

**(2)** *Standard for Appointing Class Counsel.* When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.

**(3)** *Interim Counsel.* The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

**(4)** *Duty of Class Counsel.* Class counsel must fairly and adequately represent the interests of the class.

A-16

**(h) Attorney's Fees and Nontaxable Costs.** In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

**(1)** A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

**(2)** A class member, or a party from whom payment is sought, may object to the motion.

**(3)** The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

**(4)** The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

## CREDIT(S)

(Amended February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 24, 1998, effective December 1, 1998; March 27, 2003, effective December 1, 2003; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009; April 26, 2018, effective December 1, 2018.)

Fed. Rules Civ. Proc. Rule 23, 28 U.S.C.A., FRCP Rule 23
Including Amendments Received Through 4-1-23

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

A-17