**No. 24-7648**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL KATZ-LACABE; DR. JENNIFER GOLBECK, on behalf of themselves
and all others similarly situated, *Plaintiffs-Appellees*,

SARAH FELDMAN, *Objector-Appellant*,

v.

ORACLE AMERICA, INC., a corporation organized under the laws
of the State of Delaware, *Defendant-Appellee*,

CHRISTOPHER WILLIAMS, *Objector*.

Appeal from the United States District Court for the Northern District of California,
No. 3:22-cv-04792-RS, Hon. Richard Seeborg

## ANSWERING BRIEF FOR ORACLE AMERICA, INC.

PURVI G. PATEL
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017

ZACHARY S. NEWMAN
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

AILEEN M. MCGRATH
TIFFANY CHEUNG
ZACH ZHENHE TAN
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Tel: (415) 268-6153
AMcGrath@mofo.com

*Counsel for Defendant-Appellee Oracle America, Inc.*

JULY 7, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION .............................................................................. 1

STATEMENT OF THE ISSUE ............................................................ 3

RELEVANT STATUTORY PROVISIONS .......................................... 3

JURISDICTIONAL STATEMENT ..................................................... 3

STATEMENT OF THE CASE ............................................................. 3

      A.    Litigation History .............................................................. 3

      B.    Settlement Negotiations and Approval ............................... 7

SUMMARY OF ARGUMENT ............................................................ 13

STANDARD OF REVIEW ................................................................. 14

ARGUMENT ..................................................................................... 16

I.    IN FINDING THE SETTLEMENT FAIR AND REASONABLE, THE
DISTRICT COURT FULFILLED ITS OBLIGATION TO EVALUATE
AND DISCUSS ALL RELEVANT CONSIDERATIONS ...................... 16

      A.    The District Court Fully Explained Its Reasons For Approving The
Settlement ........................................................................ 17

      B.    The District Court Did Not Need To Consider A Hypothetical Due
Process Discount To Any Statutory Damages Award ............ 23

II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
APPROVING A PLAN OF EQUAL ALLOCATION ........................... 32

CONCLUSION .................................................................................. 37

# TABLE OF AUTHORITIES

**Cases**

*Akins v. Facebook, Inc.*,
 No. 23-3550,
 2025 WL 484621 (9th Cir. Feb. 13, 2025) ......................................15, 24, 25, 26

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)........................................................................................29

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) .............................................................................17

*Briseño v. Henderson*,
 998 F.3d 1014 (9th Cir. 2021) ...........................................................................23

*In re Cal. Pizza Kitchen Data Breach Litig.*,
 129 F.4th 667 (9th Cir. 2025) ............................................................................18

*Campbell v. Facebook, Inc.*,
 951 F.3d 1106 (9th Cir. 2020) ...........................................................................14

*Charter Oaks Fire Ins. Co. v. JP & WJ, Inc.*,
 230 F. App'x 650 (9th Cir. 2007) ......................................................................16

*Churchill Vill., LLC v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004) .............................................................................22

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992) ...........................................................................32

*In re Facebook, Inc. Internet Tracking Litig.*,
 No. 22-16903,
 2024 WL 700985 (9th Cir. Feb. 21, 2024) ..................................................15, 31

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ........................................... 13, 14, 15, 17, 36, 37

*Kang v. Fyson*,
No. 22-15694,
2022 WL 6943174 (9th Cir. Oct. 12, 2022) ......................................32

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ...................... 10, 14, 15, 26, 27, 28, 32, 33, 34, 35

*McKinney-Drobnis v. Oreshack*,
16 F.4th 594 (9th Cir. 2021) ...............................................18

*In re Mego Fin. Corp. Secs. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...............................................32

*Murray v. Grocery Delivery E-Servs. USA Inc.*,
55 F.4th 340 (1st Cir. 2022) ...............................................34

*Officers for Just. v. Civ. Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...........................................26, 29

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ...............................................18

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999).......................................................34

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...........................................18, 25, 26, 33

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ...............................................22

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3rd Cir. 2011) ...........................................33, 34

*In re Veritas Software Corp. Secs. Litig.*,
496 F.3d 962 (9th Cir. 2007) ...............................................15

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) ...................... 13, 15, 23, 24, 26, 28, 31

**Rules**

9th Cir. R. 10-3.1 ...................................................................16

Fed. R. App. P. 10 ................................................................16

Fed. R. Civ. P. 23 ..........................................................3, 13, 18, 23, 33

**Other Authorities**

*Procedural Guidance for Class Action Settlements* (Sept. 5, 2024),
    https://cand.uscourts.gov/forms/procedural-guidance-for-class-
    action-settlements/ ........................................................30, 31

iv

## INTRODUCTION

Over the course of years of litigation, the district court developed a deep understanding of the strengths and weaknesses of Plaintiffs' claims alleging that Oracle wrongfully "surveilled" people worldwide.  Plaintiffs initially asserted several causes of action on behalf of various broad classes, including a "Worldwide Class" and a "United States Sub-Class."  But after three rounds of motion-to-dismiss briefing and two opportunities for Plaintiffs to amend their complaint, their claims were whittled down to a subset of state-law claims on behalf of California and Florida residents.  Even as to those remaining claims, the district court recognized that some "barely" survived dismissal.

After engaging in voluminous document discovery, consulting with experts, participating in supervised mediation and extensive negotiations, and while still facing an interlocutory appeal, class certification, and summary judgment, Plaintiffs agreed to a $115 million settlement with Oracle to be allocated equally among all valid claimants.  Notice of this settlement reached more than 200 million individuals, resulting in 3.2 million claims.  Relying heavily on its prior detailed rulings recognizing the weaknesses of Plaintiffs' claims and the risks of further litigation, the district court determined the settlement met all indicia of fairness and entered final approval.

As part of its fairness determination and settlement approval, the district court also addressed and resolved a handful of objections. Appellant Sarah Feldman—an objector who has made regular appearances in privacy class-action settlements—remains the lone individual challenging the nine-figure settlement on appeal. Feldman raises the same objections that this Court has rejected time and again, including in appeals brought by Feldman herself. As in those earlier cases, this Court should reject Feldman's objections and affirm.

First, Feldman complains that the district court, in making its fairness determination, failed to explore how a potential due process limitation on a possible statutory damages award justified the value of the settlement. In particular, Feldman argues the district court should have first calculated the maximum value of Plaintiffs' statutory claims before applying a due process discount. But only a few months ago in a separate appeal, this Court rejected Feldman's demand that district courts perform such a formulaic exercise to evaluate settlement fairness. Feldman's tried-and-failed argument is especially meritless here given that the district court expressly found and explained that a variety of litigation risks and weaknesses in Plaintiffs' claims—not any hypothetical due process limitation that might apply to Plaintiffs' theoretical maximum recovery—justified its fairness determination.

Second, Feldman objects to the district court's approval of an equal, pro-rata allocation of settlement funds across all valid claimants, and instead that the district

2

court should instead have required an unequal allocation of funds across non-existent settlement sub-classes based on Feldman's speculation as to the relative merits of each hypothetical sub-class's claims. Again, this Court has rejected that very argument and should do the same here.

The district court's approval of the settlement should be affirmed in its entirety.

## STATEMENT OF THE ISSUE

Did the district court validly exercise its discretion in approving a $115 million settlement, to be allocated equally across all claimants, based on its consideration of the relevant indicia of fairness?

## RELEVANT STATUTORY PROVISIONS

Pursuant to Circuit Rule 28-2.7, the full text of Rule 23 of the Federal Rules of Civil Procedure is set forth in the addendum bound with the brief.

## JURISDICTIONAL STATEMENT

Oracle agrees with Feldman's jurisdictional statement.

## STATEMENT OF THE CASE

### A.    Litigation History

Plaintiffs Katz-Lacabe, Golbeck, and Ryan filed a putative class action complaint against Oracle in August 2022, alleging that Oracle's "regularly conducted business practices . . . amount[ed] to a deliberate and purposeful

surveillance of the general population via their digital and online existence."
2-OracleSER-427.  Plaintiffs alleged that Oracle's acts of tracking, compiling, and
brokering the data of internet users gave rise to various causes of action under the
federal Electronic Communications Privacy Act ("ECPA"), the California
Constitution, California's Unfair Competition Law ("UCL"), the California Invasion
of Privacy Act ("CIPA"), California common law, and the law of unjust enrichment.
2-OracleSER-475-91.  Given the breadth of Plaintiffs' allegations and the
numerosity of their causes of action, Plaintiffs sought to represent various putative
classes, including a "Worldwide Class" and a "United States Sub-Class."
2-OracleSER-473.

Oracle moved to dismiss all causes of actions, which the district court granted
in part.  2-OracleSER-384-423.  The district court dismissed (i) the ECPA claim for
Plaintiffs' failure to plead around the fact that Oracle's customers must have
consented to the use of Oracle's tools, thereby triggering the statute's one-party-
consent defense, (ii) the UCL claim for Plaintiffs' failure to allege "a specific
monetary or economic loss," and (iii) the unjust enrichment claim for Plaintiffs'
failure to allege that Oracle had "unjustly retained a benefit at Plaintiffs' expense."
ER-165-70.  Engaging in a choice-of-law analysis, the district court further held that
Plaintiffs' attempt to assert California state-law claims on behalf of non-California
residents (including Plaintiffs Golbeck and Ryan, residents of Florida and Ireland

respectively) failed. ER-170-74. In total, the district court dismissed three of Plaintiffs' seven claims, and allowed Plaintiffs' remaining California claims to proceed on behalf of California residents alone. ER-175.

For the remaining claims, the district court repeatedly noted that some "barely" survived dismissal. ER-175. For example, regarding the invasion of privacy and intrusion upon seclusion claims under the California Constitution and common law, the district court found it "a close question as to whether Oracle plausibly did collect and aggregate" the kinds of sensitive information that could give rise to such claims. ER-164. And for the statutory claim under CIPA, Plaintiffs had "pled *just barely enough* to withstand dismissal" by alleging that Oracle could have collected sensitive information via online forms. ER-168 (original emphasis).

Dropping Plaintiff Ryan (whose claims as a non-U.S. resident could not survive given the district court's choice-of-law analysis), Plaintiffs Katz-Lacabe and Golbeck filed an amended complaint. 2-OracleSER-293-383. The amended complaint was based on the same allegations of "deliberate and purposeful surveillance of the general population," but raised a slightly different set of claims. 2-OracleSER-296. While Plaintiffs again pled their federal ECPA claim and their California state-law claims, they also included new Florida statutory and common-law claims on behalf of a putative Florida sub-class. 2-OracleSER-350-81.

The district court granted Oracle's motion to dismiss the amended complaint (2-OracleSER-2-39) in part. Again, the district court concluded that Plaintiffs could not bring California state-law claims on behalf of non-California residents. ER-139-40. Similarly, the district court dismissed the ECPA claim "for the reasons discussed in [its] prior order . . . in light of Defendant's consent defense." ER-144-45. The district court also dismissed Plaintiffs' newly pled claim for intrusion upon seclusion under Florida law due to Plaintiffs' failure to "plausibly point to any particular 'electronic space' where Plaintiff Golbeck had a reasonable expectation of privacy into which Oracle intruded." ER-140-41.

The district court denied Oracle's motion to dismiss Plaintiffs' two other Florida state-law claims for unjust enrichment and violation of the Florida Stored Communications Act ("FSCA"), the CIPA claim under California law (that had barely survived the first time), and the California claim for unjust enrichment. For the unjust enrichment claim, the district court reasoned that Plaintiffs, by alleging they were harmed by the loss of privacy in their data, had "done just enough . . . for their [claim] to survive." ER-145-46.

Plaintiffs then filed their second amended complaint, again based on the same theory of Oracle's purported surveillance of internet users, and again advancing a similar set of federal, California, and Florida claims. 1-OracleSER-153-253. In a third round of dismissal briefing, Oracle sought to dismiss only two causes of action:

the federal ECPA claim and the Florida common-law claim for intrusion upon seclusion. 1-OracleSER-133-52. The district court once again dismissed both claims. On the ECPA claim, the district court reiterated that Plaintiffs' claim was barred by Oracle's one-party-consent defense. ER-127-32. As to the Florida intrusion upon seclusion claim, the district court once more concluded that Plaintiffs had failed to plausibly allege that Oracle had intruded into a "private place" necessary for that cause of action. ER-132-33.

Following the district court's third dismissal order, Plaintiffs moved to certify for interlocutory appeal the questions whether the district court had properly dismissed Plaintiffs' federal ECPA claim and whether Plaintiffs had adequately invoked the "crime-tort exception" to Oracle's "affirmative defense of consent." 1-OracleSER-114-32. Oracle opposed that motion on the ground that the district court had properly applied this Court's ECPA precedent. ER-108-24.

## B. Settlement Negotiations and Approval

Before the district court ruled on Plaintiffs' motion for interlocutory appeal, the parties jointly stipulated to stay discovery and to vacate all case deadlines. 1-OracleSER-109-13. As a result of "an arms-length mediation with a third party neutral" and "continued negotiations," the parties had "reached a classwide settlement in principle, subject to the approval of the Court." 1-OracleSER-110.

The proposed settlement was the product of a lengthy and thorough process. Beyond the multiple rounds of dismissal briefing described above, the parties had "engaged in extensive discovery efforts" that led to the production of "160,000 pages of responsive documents," "as well as over 283 videos . . . spanning approximately 173 hours." ER-86-87. "Plaintiffs retained technical experts" to aid in the analysis of these documents. ER-87. Thereafter, the parties participated in "an extended day of in-person mediation" with third-party neutrals. ER-87. As part of that process, the parties "prepared detailed mediation briefs outlining their positions on the strengths and weaknesses of the case." ER-87. Following that mediation, the parties engaged in twelve more weeks of continued negotiations, with the assistance of the third-party neutrals, to hammer out the settlement agreement Plaintiffs ultimately presented to the district court. ER-87-91.

Plaintiffs filed an unopposed motion for preliminary approval of the class settlement. As Plaintiffs represented, "[t]he proposed Settlement delivers substantial relief to the Settlement Class, providing that Oracle will pay $115 million into a non-reversionary cash fund to be distributed evenly among Settlement Class members." ER-83. The proposed settlement would resolve all federal, California, and Florida law claims alleged in the second amended complaint and would be entered on behalf of a "single, nationwide class." ER-92.

Plaintiffs emphasized the size and breadth of the settlement, particularly in comparison to other privacy class-action settlements. Plaintiffs represented that there were "only two privacy class action settlements larger than this one not involving a data breach," and explained that both those edge cases involved different factual and procedural circumstances. ER-101-02. The $115 million settlement amount reflected Plaintiffs' own acknowledgment that "[c]alculating class-wide damages under the claims asserted here is an imprecise exercise and would have drawn significant challenges from Oracle." ER-93. Plaintiffs also acknowledged the "substantial pretrial risks such as whether the Court would grant class certification or enter summary judgment against them," as well as the "usual risks" at trial, "including whether the Court would allow the presentation of Plaintiffs' damages models and whether a jury would award the damages sought." ER-94-95. As the approval motion spelled out, the $115 million settlement provided "a guaranteed, immediate, and substantial cash recovery," in contrast to the grueling, uncertain process of taking a "novel" and "risky" case to trial with "pivotal hurdles yet to come." ER-95.

The district court held a preliminary approval hearing where it questioned Plaintiffs' counsel on how they arrived at the "overall value of the claims" and their "justification for the reduction" of that overall value. 1-OracleSER-36. The district court heard from Plaintiffs' counsel as to their estimation of the risk and uncertainty

9

in trying a novel privacy class action. 1-OracleSER-36-38. The district court also questioned Plaintiffs' counsel about the fact that the proposed settlement class contained members from different states with different claims, and explored how that "relate[d] to the idea that the class members are all going to be treated the same for purposes of their recovery." 1-OracleSER-39. In response, Plaintiffs' counsel cited precedent from this Court holding that settlement classes may include members with differing claims and that "the purpose of the opt out process is to allow plaintiffs who think that they might have stronger claims to opt out of the settlement and proceed." 1-OracleSER-39 (citing *Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)). Following the hearing, the district court found that the settlement "certainly falls within the parameters of what's fair[,] reasonable[,] and adequate" and preliminarily approved it. 1-OracleSER-45. The district court issued a written preliminary approval order shortly after, setting a process for notice to the class, opt-out requests, objections, and submission of claims. ER-64-73.

At the end of that months-long process, Plaintiffs moved for final approval of the settlement. In their moving papers, Plaintiffs informed the district court that notice had reached "approximately 214,000,000 people, *i.e.*, 97% of the Class," and had "resulted in over 3.2 million submitted claims, falling squarely within the estimated claims response rate reported to the Court at Preliminary Approval."

ER-21.  In contrast, only 28 objections had been filed, with 481 requested opt-outs. ER-21.

Most of those 28 objections were directed to the sufficiency of the $115 million in monetary relief.  ER-30.  In response, Plaintiffs reiterated that the fairness of the settlement must "adequately account for the risks and delays involved in further litigation."  ER-30.  Plaintiffs directly addressed Feldman's specific objection, noting that her argument that the settlement figure be judged by the "class size times an arbitrary discount on statutory damages" had been "rejected repeatedly" by this Court.  ER-32-33.  "As in those cases," Feldman's objection "ma[de] no effort to assess the risks of class certification, summary judgment, or trial for CIPA claims that [the district court] found 'barely' survived dismissal." ER-33.  Plaintiffs also rebutted Feldman's other objection as to the equal "*pro rata* allocation*" of the settlement funds "based on the naked assertion that 'California class members [with claims under CIPA] possess significantly more valuable claims,'" explaining that the "Ninth Circuit has rejected this exact argument," too. ER-35 (district court's alteration).

Oracle independently submitted responses to the handful of objections raised. 1-OracleSER-24-32.  Like Plaintiffs, Oracle argued that objections as to "the reasonableness of the monetary relief provided in the Settlement ignore the risks of continued litigation." 1-OracleSER-26.  Responding to Feldman's objection that the

amount was "unreasonable in relation to the maximum possible damage award associated with the at-issue causes of action," Oracle emphasized that a fair settlement must necessarily reflect "the significant challenges Plaintiffs would face in attempting to prove their claims" and reiterated Oracle's intent to seek summary judgment and resist class certification.  1-OracleSER-26-29.

At the final fairness hearing, Plaintiffs' counsel again explained why the settlement was fair given the "huge amount of uncertainty here, both on proving up [Plaintiffs'] claims on the merits and on damages," the "risks around showing consent on a class-wide basis," "technical challenges to the wiretapping claims," the novelty of the case, and various challenges in predicting damages.  1-OracleSER-16-17.  The district court acknowledged its own prior rulings that "this case had some serious obstacles in going the distance," agreed that the proposed settlement was "fair, reasonable, and adequate," and stated its intent to "approve the settlement."  1-OracleSER-6; 1-OracleSER-21.  The district court entered its written approval order further explaining its decision the next day.  ER-3-12.

Two of the twenty-eight objectors appealed.  One of those appellants failed to file an opening brief, resulting in dismissal of his appeal.  1-OracleSER-2.  Feldman remains the sole objector opposing the settlement's approval.

## SUMMARY OF ARGUMENT

The district court carefully considered, and then approved, the multi-million-dollar settlement the parties reached after extensive negotiations. Particularly in light of the deferential standard of review that applies to such district court judgments, the district court's approval—including its analysis of Rule 23(e) and related factors under *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), as well as its endorsement of the proposed allocation plan—should be affirmed.

I.  In finding the settlement fair and reasonable, the district court fulfilled its obligation to consider and evaluate all relevant factors, including the risks of further litigation. The entire record—including three dismissal orders, multiple briefs supporting settlement approval, hearing transcripts, and written approval orders—establishes that the district court considered each of the relevant factors in determining that the $115 million settlement was fair, adequate, and reasonable.

Feldman disputes little of this and does not challenge the district court's substantive fairness determination. Instead, citing this Court's decision in *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022), she asserts that the district court failed to adequately explain how it accounted for a hypothetical due process limitation on a statutory damages award—including by declining to calculate the theoretical maximum aggregate statutory damages available. This Court has rejected Feldman's very argument, and her efforts to repackage it as a failure of "exploration"

13

do not warrant a different outcome. That is all the more true in a case like this one, where both the parties and the district court relied on a variety of litigation risks and weaknesses in Plaintiffs' claims to justify the settlement's fairness. The district court did not need to also address another potential risk factor that was exceedingly unlikely to ever matter, given the various other vulnerabilities in Plaintiffs' claims.

II.     Feldman's argument that the settlement's equal-allocation plan was inequitable, based on her speculation that certain members of the class (including herself) had stronger and thus more valuable claims, fails for similar reasons. Here too, this Court has rejected settlement objections based on conjectural differences in the value of class members' claims. And again, those arguments fall particularly flat in this case, where there is zero basis in the record to support Feldman's speculation that she possessed significantly more valuable claims. Indeed, the record—showing that the litigants and the district court all recognized that Feldman's claims *barely* survived dismissal—is exactly to the contrary.

## STANDARD OF REVIEW

Appellate review of a district court's fairness determination is "extremely limited." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020); *Lane*, 696 F.3d at 818. This Court has "repeatedly stated that the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [wa]s exposed to the litigants, and their strategies, positions and proof." *Hanlon*,

150 F.3d at 1026 (internal quotation marks omitted).  Thus, this Court "will set aside that determination only upon a 'strong showing that the district court's decision was a clear abuse of discretion.'"  *Lane*, 696 F.3d at 818 (quoting *Hanlon*, 150 F.3d at 1026-27).  The "district court's approval of an allocation plan" is reviewed under the same deferential abuse of discretion standard.  *In re Veritas Software Corp. Secs. Litig.*, 496 F.3d 962, 968 (9th Cir. 2007).

Contrary to Feldman's assertion, there is no issue on appeal that should be reviewed "de novo," including any issue arising from "*Wakefield*'s new due process standards."  Opening Br. 10.  As discussed below, any potential due process limitation is only one possible, but not mandatory, consideration in a district court's assessment of the traditional settlement-fairness factors.  Accordingly, this Court has reviewed arguments about *Wakefield* under the same abuse-of-discretion standard that applies to all other aspects of a district court's fairness determination.  *See Akins v. Facebook, Inc.*, No. 23-3550, 2025 WL 484621, at *1 (9th Cir. Feb. 13, 2025); *In re Facebook, Inc. Internet Tracking Litig.*, No. 22-16903, 2024 WL 700985, at *1 (9th Cir. Feb. 21, 2024).

## ARGUMENT

I.  **IN FINDING THE SETTLEMENT FAIR AND REASONABLE, THE DISTRICT COURT FULFILLED ITS OBLIGATION TO EVALUATE AND DISCUSS ALL RELEVANT CONSIDERATIONS**

Feldman's objection to the district court's fairness determination is "procedural." Opening Br. 11; *see also id.* at 17 (acknowledging that Feldman seeks only "to give the district court a further opportunity to properly perform the required exploration"). Although Feldman sometimes describes this objection in more general terms—for instance, claiming that "[t]he district court failed to show it performed the comprehensive exploration" of the relevant settlement-fairness factors, *id.* at 11—her challenge boils down to the specific argument that the district court failed to adequately consider a possible due process limitation on a hypothetical statutory damages award. *Id.* at 10, 15, 17.

However framed, Feldman's procedural challenge fails. The entire record (which Feldman neglects to provide to this Court) [1] shows the district court

---

[1] Feldman did not comply with this Court's rules for the ordering of transcripts, particularly the transcripts of the district court's preliminary and final approval hearings. *See* 9th Cir. R. 10-3.1. Feldman's rule violation threatens to impair this Court's ability to review the district court's fairness determination upon the whole record, and is itself a basis for affirming. *Charter Oaks Fire Ins. Co. v. JP & WJ, Inc.*, 230 F. App'x 650, 653 (9th Cir. 2007) (Fletcher, J., concurring) (urging affirmance based on appellant's failure to abide by 9th Cir. R. 10-3.1 or to otherwise provide transcript of relevant hearings); Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or contrary to the evidence, the appellant must include in the record a transcript of *all* evidence relevant to that finding or conclusion." (emphasis added)). In support

comprehensively evaluated the relevant fairness considerations, including by conducting an assessment of the risks and costs of further proceedings. As this Court held when it rejected Feldman's same argument in another case, that the district court did not formulaically ascertain Plaintiffs' theoretical maximum statutory damages and then apply a hypothetical due process discount does not undermine settlement approval.

### A. The District Court Fully Explained Its Reasons For Approving The Settlement

In approving a class action settlement, the district court's procedural obligation is to consider and balance these factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. Where a settlement is negotiated before class certification, a district court must also consider any "evidence of collusion or other conflicts of interest." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Proof of the district court's consideration of the relevant fairness factors need not be

_____

of affirmance, Oracle provides copies of both transcripts in its supplemental excerpts of record.

contained exclusively in "a written order" and can instead be "reflected in the record," including at hearings. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948-49 (9th Cir. 2015).

Although Rule 23(e) was amended in 2018, those amendments did not "'displace' this Court's previous articulation of the relevant factors, and it is still appropriate for district courts to consider these factors in their holistic assessment of settlement fairness." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021); *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 675 (9th Cir. 2025) ("key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for [fairness] analysis").

Here, the district court's fairness determination should be affirmed because, as Feldman largely does not dispute, the record establishes that the district court fulfilled its duty to "balance[] each of the relevant factors in approving the settlement." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009).

***Strength of the plaintiff's case.*** As Feldman concedes, the district court explained in its settlement approval order that the "$115 million Settlement provides substantial benefit to the Class in light of the strengths and weaknesses of the claims asserted," and that both "Class Counsel and the Court have carefully evaluated those strengths and weaknesses." ER-8; Opening Br. 14 n.8.

That explanation and express finding is consistent with the record and background of the case, which demonstrates that the district court was well aware of the vulnerabilities in Plaintiffs' case. From the resolution of Oracle's first motion to dismiss and carrying through to the second and third dismissal motions, the district court repeatedly assessed and ruled on the strengths and weaknesses of Plaintiffs' claims. *Supra* pp. 4-7. Plaintiffs relied on that series of rulings when advocating for approval of the settlement. ER-27; ER-33; ER-35; ER-84; ER-94; 1-OracleSER-37 ("But of course, your honor, in ruling on our claims, had noted that some of them, including the wire tap claims, barely survived."). And the district court expressly referenced those same rulings, and its recognition that some of Plaintiffs' claims had "'barely' survived dismissal," in supporting its fairness determination. ER-8.

***Risk, expense, complexity, and likely duration of further litigation.*** As Feldman also concedes (Opening Br. 14), the district court further found that "[t]he Settlement provides meaningful relief to the Settlement Class given the range of reasonable possible recoveries by the Settlement Class Members, especially since further litigation would be complex, expensive, lengthy, and risky." ER-8. In rejecting specific objections that "the $115 million monetary relief is too low," the district court explained that those "objections do not adequately account for the risks and delays involved in further litigation," including the specific "risks of class

19

certification, summary judgment, or trial for CIPA claims that this Court found 'barely' survived dismissal." ER-8.

Again, the record confirms that the district court carefully explored this factor. At the preliminary approval hearing, the district court questioned Plaintiffs' counsel on why a "115 million fund is appropriate" given that Plaintiffs originally represented their "claims were valued at somewhere in the billion[s]." 1-OracleSER-36. In response, Plaintiffs acknowledged that "proceeding to trial and of course class certification is always a massive issue" and that "Oracle has previewed its arguments on that ground and its intent to fight that very aggressively." 1-OracleSER-36-38. In its responses to objections, Oracle also provided a detailed explanation of the many defenses and other arguments it intended to raise at various forthcoming stages of the case. 1-OracleSER-26-29. At the final approval hearing, Plaintiffs again emphasized that they "faced a huge amount of uncertainty here, both on proving up [their] claims on the merits and on damages," and that there were "risks around showing consent on a class-wide basis," "technical challenges to the wiretapping claims," and "question[s] of whether jurors would ultimately even find [Oracle's] conduct highly offensive." 1-OracleSER-16-17. Additionally, Plaintiffs' counsel represented, and the district court acknowledged, that "[n]o privacy case of this type has ever gone to trial," significantly increasing the uncertainty that

Plaintiffs faced in this case and the risk that they would get nothing beyond nominal damages even if they successfully proved liability.  1-OracleSER-17.

*Amount offered in settlement.*  The district court found that "[t]he $115 million Settlement provides substantial benefits" and "meaningful relief to the Settlement Class," and specifically rejected objections that such an amount of monetary relief was "too low."  ER-8.  Once again, the district court was fully informed on this factor.  For example, Plaintiffs' counsel represented at the preliminary approval hearing that this settlement is "very, very large," and would be "potentially the third largest of any non data breach privacy class action." 1-OracleSER-38.  At the final approval hearing, Plaintiffs' counsel underscored that "115 million is really . . . a very substantial sum," and was in fact "among the top 10 of any privacy class action."  1-OracleSER-17.

*State of proceedings and discovery completed.*  The district court also found the settlement was "informed by extensive discovery and expert analysis that allowed Plaintiffs to make a thorough evaluation of the strengths and weaknesses of their claims, as well as the fairness, reasonableness, and adequacy of the Settlement." ER-8.  In making this finding, the district court cited Plaintiffs' papers detailing how the "parties engaged in over a year and a half of discovery," including their counsel's review of "a substantial portion of more than 160,000 pages of responsive

documents, as well as over 283 videos" produced by Oracle and "consult[ation] with several technical experts throughout the course of the case." ER-102-03.

*Reaction to proposed settlement.* As the district court acknowledged, class notice reached "approximately 83.33 percent of the target audience of 220 million Americans," resulting in "3.2 million claims." ER-4; 1-OracleSER-16. Against the backdrop of those substantial numbers, only 28 objections were lodged and 481 opt-outs requested. As Plaintiffs noted, those 481 opt-outs represent just "0.015% of those who responded to the Settlement," and this Court has affirmed settlement awards with much higher numbers of objections and opt-outs. ER-25-26 (citing *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)).

*Collusion or fraud.* Finally, the district court recognized the higher standard applicable to settlements reached before class certification and found that "[t]here is no indicia of fraud or collusion underlying this Settlement, and it was reached as a result of an informed arm's length mediation session and subsequent negotiations with two respected mediators." ER-7. Far from simply deferring to those neutral mediators and the representations of counsel, the district court also "performed its own, independent analysis of the Settlement's fairness, reasonableness, and adequacy." ER-7-8; *cf. Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049, 1060-61 (9th Cir. 2019) (reversing where district court applied a presumption of fairness in approving pre-certification settlement). That assessment reflected that

the agreement bears none of the hallmarks associated with a collusive settlement, such as "[d]isproportionate fee awards, clear sailing agreements, and kicker clauses." *Briseño v. Henderson*, 998 F.3d 1014, 1027 (9th Cir. 2021); *see* 1-OracleSER-19 (district court noting that class counsel's request for 25% of the settlement award was similar to the benchmark for fees recognized in this Circuit); 1-OracleSER-11 (district court noting parties' opposing views as to value achieved by class counsel); 1-OracleSER-16 (district court noting the non-reversionary nature of the settlement fund); 1-OracleSER-52 (describing non-reversionary settlement fund).

### B.     The District Court Did Not Need To Consider A Hypothetical Due Process Discount To Any Statutory Damages Award

Although Feldman tries to cloak her appeal in language suggesting a broader challenge, *supra* p. 16, Feldman does not actually quibble with any of the district court's Rule 23(e) analysis—she neither challenges the bulk of the district court's assessment of the pertinent factors nor objects to the district court's substantive fairness determination. *Supra* pp. 16-23; *see also* Opening Br. 10, 14, 17. Instead, Feldman seeks reversal and remand for the specific, and more limited, reason that the district court purportedly failed to adequately "explore[] or explain[]" a specific litigation "risk," namely "the prospect of a *Wakefield* due process adjustment of an award of aggregated statutory damages." Opening Br. 11-17.

Feldman unsuccessfully made a similar *Wakefield*-based objection in an appeal this Court decided in a memorandum opinion earlier this year, *Akins v. Facebook, Inc.*—a case that Feldman conspicuously fails to discuss or even cite. 2025 WL 484621. There, Feldman (represented by the same counsel) appealed the approval of a $725 million settlement, citing *Wakefield* and arguing that the plaintiffs' class counsel "evaded their duty to estimate maximum recovery on each of the statutory damage claims and to provide an explanation of proposed discounts." Opening Br. at 15, *Akins* (9th Cir. May 4, 2024), ECF21. Feldman urged this Court to adopt a rule that "[i]n the context of a proposed settlement of class-wide statutory damages, the settlement amount must be compared to a likely recovery on those claims if they were tried, which is determined by adjusting gross statutory damages according to litigation risk and, if applicable, due process concerns." *Id.* at 17. In that case, too, Feldman claimed the district court's obligation to "adequately consider" the settlement-fairness factors required this supposedly "procedural" rule. *Id.* at 3.

The panel declined Feldman's invitation to require district courts to make such a mechanistic determination. *Akins*, 2025 WL 484621, at *1. Acknowledging that *Wakefield* "holds that aggregated statutory damages are, in certain extreme circumstances, subject to constitutional due process limitations," the Court specifically rejected Feldman's argument that *Wakefield* "prevents a district court

24

from considering due process limitations to any recovery until the court has calculated the maximum potential statutory damages and then adjusted for any litigation risk." *Id.* (internal quotation marks omitted). As the panel explained, requiring the district court "to assess potential recovery against the settlement amount in such a formulaic fashion" would be "contrary to the weight" this Court "afford[s] the 'product of an arms-length, non-collusive, negotiated resolution.'" *Id.* (quoting *Rodriguez*, 563 F.3d at 965).

Despite Feldman's decision to ignore *Akins* and recast her argument as one directed to the district court's "exploration," her objection here fails for the same reasons. Try as she might, Feldman cannot avoid that her proffered "exploration" rule (Opening Br. 11) would require district courts to evaluate the proposed settlement against the maximum statutory damages that could be theoretically available. Feldman criticizes the district court's supposed failure to "state the potential recovery for *any* claim . . . were the Class to prevail on each of Oracle's defenses" before "justify[ing] the settlement's discount against each claim according to Oracle's alleged defenses and other risks, including the possibility of due process adjustment of statutory damages." Opening Br. 7. And she repeatedly emphasizes what she believes to have been the maximum statutory damages available, characterizing the case as involving "$100 billion" in potential recovery on the CIPA claim alone and faulting the district court for not explaining how "the risk of a

*Wakefield* adjustment played into the district court's approval of a [reduced] recovery." *Id.* at 15, 12 n.6, 7; *see also* ER-52 (insisting that the district court "begin with a calculation of aggregated statutory damages, followed by a discount according to risk of continued litigation, and then proceed to a cross-check and possible adjustment for *Wakefield* oppressiveness"). Requiring such an uncritical calculation of the theoretically available statutory damages, followed by an assessment of whether due process would hypothetically result in a discount, is exactly what *Akins* disapproved as inconsistent with this Court's framework for evaluating negotiated settlements. 2025 WL 484621, at *1.

That framework, apart from *Akins*, further illustrates why Feldman's request for a formulaic *Wakefield*-based rule is incorrect. This Court has long recognized that district courts have significant flexibility and discretion in conducting a fairness determination, which may ultimately consist of "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Rodriguez*, 563 F.3d at 965 (quoting *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). Thus, this Court has long rejected any "particular formula by which [a settlement] outcome must be tested." *Id*.

That includes repudiating any requirement that district courts must "quantif[y] the expected value of fully litigating the matter" and compare that hypothetical to the settlement amount. *Id*. Most directly, this Court in *Lane* rejected the argument

26

that "the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award." 696 F.3d at 823. As this Court explained, "[e]ven as to statutory damages, questions of fact pertaining to which class members have claims under the various causes of action would affect the amount of recovery at trial, thus making any prediction about that recovery speculative and contingent." *Id.* Instead of engaging in such contingent speculation, district courts should simply review the "fairness and adequacy of the overall settlement amount to the class as a whole" and exercise their "broad discretion" on that basis. *Id.* at 824.

That is exactly the analysis that the district court performed here, and which illustrates why no further consideration of any hypothetical due process issue was necessary or appropriate. The district court recognized that the settlement value was justified because "further litigation would likely be complex, expensive, lengthy, and risky." ER-8. Those litigation risks included the "risks of class certification, summary judgment, or trial for CIPA claims that [the district court] found 'barely' survived dismissal," ER-8—risks that made it uncertain whether Plaintiffs would obtain *any* statutory damages award, let alone one that could potentially trigger due process protections. Given its analysis of these various litigation risks, the district court's approval order is not deficient for failing to address the "contingent" and

27

"speculative" risk of a due process adjustment to a hypothetical statutory damages award. *See Lane*, 696 F.3d at 823.

The rest of the record confirms the district court's understanding of the litigation risks—independent of any application of *Wakefield*—justifying the proposed settlement value. *Supra* pp. 9-12, 18-21. Throughout their briefing and at both settlement-approval hearings, Plaintiffs emphasized the many reasons they could not estimate a potential damages award with any precision, including that they had brought a novel case with no precedent in terms of recovery; success at class certification, summary judgment, and on appeal was uncertain; and the district court had already made clear that some claims barely survived dismissal. ER-93; 1-OracleSER-36-38; 1-OracleSER-16-17. In contrast, and as Feldman acknowledges (Opening Br. 12-13), the issue of *Wakefield*'s due process limitation was only briefly addressed in Plaintiffs' approval briefing, ER-93-94; ER-32, mentioned in passing at the preliminary approval hearing, 1-OracleSER-38, and was not brought up at all in Oracle's brief responding to the objections or the final approval hearing, 1-OracleSER-24-32. Given this record, Feldman's "assum[ption]" that "the risk of a *Wakefield* adjustment played into the district court's approval" of a $115 million settlement (Opening Br. 15) is wrong. Instead, the record demonstrates that *Wakefield* played no significant role in the district court's evaluation of the risks and costs of further proceedings because its possible

relevance was eclipsed by the many other significant hurdles Plaintiffs' claims faced. 1-OracleSER-26-29.

Feldman's argument fails for other reasons, too. For one, she has no authority to support her demand for a formulaic approach to assessing settlement fairness, and the limited cases she does cite only reinforce why the district court's order should be affirmed. For example, Feldman derogates the district court's reasoning (Opening Br. 16) by characterizing it as "an amalgam of delicate balancing, gross approximations, and rough justice"—language she lifts from this Court's decision in *Officers for Justice*, 688 F.2d at 625. But as noted above, *supra* p. 26, this Court used that very language to emphasize that a district court's "ultimate [fairness] determination will necessarily involve a balancing of several factors" against the backdrop of "the unique facts and circumstances presented by each individual case," and that a reviewing court should "not substitute [its] notions of fairness for those of the district judge and the parties to the agreement." *Id.* at 625-26. In endorsing this flexible approach, *Officers for Justice* underscores that a district court should *not* attempt "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Id.* at 625. But that is exactly what Feldman insists the district court should have done here by first calculating the maximum potential recovery for Plaintiffs' claims and then shaving off a hypothetical due process discount. Feldman also cites *Amchem Products, Inc. v.*

*Windsor*, 521 U.S. 591, 621 (1997), for the general proposition that a district court must "show it has comprehensively explored the relevant factors in reaching its determination to approve a proposed settlement." Opening Br. 16. But as established above, and which Feldman largely does not dispute, the district court did comprehensively explore the relevant factors—it simply (and permissibly) did not conduct a mechanical calculation exercise that this Court has already held unnecessary.

For another, Feldman misleadingly invokes the Northern District of California's class action procedural guidance in faulting Plaintiffs' counsel for failing to "state the potential recovery if plaintiffs had fully prevailed" on their claims. Opening Br. 12 n.5. But Plaintiffs' counsel *did* comply with this requirement  by explaining that any attempt to specifically quantify the potential class recovery would be imprecise at best given the novelty of the claims asserted, the various litigation risks Plaintiffs faced, and the wide range of potential corresponding recoveries. ER-93; 1-OracleSER-16-17 (Plaintiffs' counsel acknowledging they "faced a huge amount of uncertainty here, both on proving up [their] claims and on damages"). This clarification is fully consonant with the district court's guidelines, which make clear the recommendations are relevant only when "applicable." *Procedural Guidance for Class Action Settlements*

(Sept. 5, 2024).[2]  And regardless, Feldman does not (and could not) explain why any departure from the class action guidance in Plaintiffs' briefing would call into question the district court's independent exercise of its discretion.

Finally, even in cases where *Wakefield* is relevant, district courts need not perform the rote analysis Feldman requests.  In such cases, this Court has made clear that the district court need do nothing more than simply consider that a sizable statutory damages award might constitute "an unreasonable baseline that would violate due process."  *In re Facebook, Inc.*, 2024 WL 700985, at *1.  And while Feldman claims district courts are required to "explore *Wakefield*'s *four-factor test*" (Opening Br. 15 (emphasis added)), this Court has never suggested that *Wakefield* imposes such a rigid analytical framework.  Instead, *Wakefield* merely identified factors that could "help assess [the] proportionality and reasonableness" of an aggregated statutory damages award.  51 F.4th at 1123.

For these many reasons, Feldman's second attempt to disrupt a negotiated settlement due to a supposed *Wakefield* issue fares no better than her first.  The district court prudently exercised its discretion in analyzing and reviewing the various settlement-fairness factors.  Its approval of the settlement should be affirmed.

---

[2] https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN APPROVING A PLAN OF EQUAL ALLOCATION

Feldman's remaining objection, asserted against the district court's approval of a plan allocating the non-reversionary settlement fund with an equal split among all 3.2 million valid claimants, should likewise be rejected. A plan for allocating settlement relief need only be "fair, reasonable, and adequate," and a district court has "discretion" to approve a proposed methodology for splitting settlement funds. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992); *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000). In exercising its discretion, a district court can consider what is "a simple, efficient, and reasonable way of allocating damages." *Kang v. Fyson*, No. 22-15694, 2022 WL 6943174, at *2 (9th Cir. Oct. 12, 2022).

Feldman argues that the district court abused its discretion because equally allocating settlement funds across all valid claimants would be "inequitable," based on her speculation that members of hypothetical California and Florida classes "possess significantly more valuable claims." Opening Br. 20. But as the district court recognized, this Court has expressly held that such objections are baseless. ER-9. In *Lane*, this Court addressed the near-identical argument that a settlement should reflect the possibility that certain members of a settlement class might have more "valuable" claims "if successful at trial." 696 F.3d at 824. This Court held that such hypothetical differences among the claims of class members "does not cast

32

doubt on the district court's conclusion as to the fairness and adequacy of the overall settlement amount to the class *as a whole*." *Id.* Indeed, the Court directly addressed the very concerns that Feldman purports to identify (Opening Br. 20):

> It is an inherent feature of the class-action device that individual class members will often claim differing amounts of damages—that is why due process requires that individual members of a class certified under Rule 23(b)(3) be given an opportunity to opt out of the settlement class to pursue their claims separately, as were the class members in this case. But a class-action *settlement* necessarily reflects the parties' pre-trial assessment as to the potential recovery of the entire class, with all of its class members' varying claims. So even if some of the class members would have [higher-value claims], . . . [t]heir presence does not in itself render the settlement unfair . . . ."

*Id.* (internal citation omitted).

*Lane*'s express holding is consistent with a broader range of precedent recognizing that a district court evaluating settlement fairness should not "'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute'" and that "'[i]t is the settlement taken as a whole, rather than individual component parts, that must be examined for overall fairness.'" *Rodriguez*, 563 F.3d at 948, 964; *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3rd Cir. 2011) ("[O]nly by engaging in the type of fact-intensive merits and choice-of-law analyses that we have rejected could a district court attempt to assay the 'varying strengths and weaknesses' of asserted state claims. We can find no

support in our case law for differentiating within a class based on the strengths and weaknesses of the theories of recovery." (internal citation omitted)).

Feldman does not (and cannot) dispute *Lane*'s holding or this broader authority. She offers no factual basis to distinguish *Lane* and similar precedent from this case. And she cites no case where a plan of allocation was held to be unfair simply because it treated all settlement claimants equally—let alone one so holding where, as here, claimants were all alleged to have been injured by the same conduct. *Cf. Sullivan*, 667 F.3d at 327-28 (rejecting similar argument where "each putative class member suffered the same alleged injury . . . irrespective of the vagaries of applicable state laws").

The most Feldman does is cite two cases that she claims stand for the proposition that "'[s]ignificant differences in contested claims or defenses have the potential to cause significant differences in claim value, which should be reflected in any fair settlement.'" Opening Br. 20 (quoting *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 346 (1st Cir. 2022), and citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857 (1999)). But neither case concerned settlement allocation at all. Instead—and as Feldman omits—both cases addressed settlement *class certification* and considered whether a settlement class should be split into smaller sub-classes to ensure adequacy of representation.

That distinction is dispositive of Feldman's *allocation* challenge. In *Lane*, this Court held that while arguments regarding significant differences in claims may be relevant to the issue of class certification, the proper avenue to raise such objections is to "challenge the district court's class certification or its decision to include individuals with [arguably different] claims in the settlement class." 696 F.3d at 824 n.5. Here, Feldman's arguments on appeal are limited to the district court's ultimate plan of allocation—not its decision to certify a settlement class. Opening Br. 2, 17. To the contrary, Feldman notes that approval of a nationwide settlement class was permitted under this Circuit's precedent. *Id.* at 18.

Beyond general forfeiture principles, adhering to that distinction makes practical and doctrinal sense. Once a settlement class is certified, requiring class counsel to advocate for different recoveries for different class members would run headlong into their duty to treat class members equally. Here, Feldman repeatedly insists that "Plaintiffs and Class Counsel owe the California and Florida Classes a duty to maximize their recoveries." Opening Br. 17. But to be clear, there were no "California and Florida Classes" for purposes of settlement. Instead, there was a "Settlement Class" that included all relevant persons "residing in the United States." ER-92. Class Counsel owed a duty to each member of that class. Indeed, had Class Counsel advocated for higher recoveries only for certain subsets (including named Plaintiffs) of the settlement class, that maneuver could have opened the settlement

to possible objections that Class Counsel had not fulfilled their duty to the Settlement Class as a whole by engaging in "disparate treatment." *See Hanlon*, 150 F.3d at 1027. An allocation plan under which "all stood to benefit equally" avoids those pitfalls. *Id.*

But even if differences in claim value could in theory derail an equally allocated settlement, there are no such differences here. Feldman conclusorily asserts that "California and Florida Class members" had "significantly more valuable" claims as compared to the "other nationwide Settlement Class members." Opening Br. 19-20. In support of that assumption, Feldman speculates that Plaintiffs' request for interlocutory appeal of the dismissal of the ECPA claim is "at best a long-shot appeal" and "so lacking in merit." *Id.* Feldman's conjecture that any California or Florida law claims were "significantly more valuable" overlooks both the district court's and the parties' consensus understanding that some of those claims barely survived dismissal, that Plaintiffs faced numerous other barriers before even reaching a trial, and that even potential recovery at trial was uncertain given the novel claims Plaintiffs were attempting to pursue. *Supra* pp. 9-12, 18-21. Thus, even accepting Feldman's contention that Plaintiffs' interlocutory appeal was a long shot, there is no support for Feldman's self-serving belief that the claims of "the California and Florida Classes" were relatively more valuable such that they "should receive all or most of the settlement proceeds." Opening Br. 17. At a minimum, the

district court—whose familiarity with the class members' claims is indisputable—was well within its discretion to find that an equal allocation plan accounted for potential variations equitably and was the fairest and most efficient manner of distributing settlement proceeds.

Ultimately, Feldman reserved the right to believe that "her personal claim was being sacrificed for the greater good." *Hanlon*, 150 F.3d at 1027. But she also retained her corresponding "right to opt-out of the class." *Id.* Feldman failed to do so, and this Court should reject her attempt to blow up a nine-figure negotiated settlement.

## CONCLUSION

This Court should affirm the district court's approval of the settlement and plan of equal allocation.

Dated:  July 7, 2025

Respectfully submitted,

/s/ Aileen M. McGrath

Purvi G. Patel
Morrison & Foerster llp
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017

Zachary S. Newman
Morrison & Foerster llp
250 West 55th Street
New York, NY 10019

Aileen M. McGrath
Tiffany Cheung
Zach ZhenHe Tan
Morrison & Foerster llp
425 Market Street
San Francisco, CA 94105
Tel: (415) 268-6153
AMcGrath@mofo.com

*Counsel for Defendant-Appellee Oracle America, Inc.*

## STATEMENT OF RELATED CASES

The undersigned attorney states the following:  I am aware of one related case, *Williams v. Oracle America, Inc.*, No. 24-7650, which was an appeal from the same settlement approval order and which was dismissed on April 3, 2025, for the appellant's failure to file an opening brief.

Dated:  July 7, 2025

/s/ Aileen M. McGrath
_____
Aileen M. McGrath

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**    | 24-7648 |

I am the attorney or self-represented party.

**This brief contains** | 8,215 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

⚪ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⚪ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⚪ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⚪ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

⚪ complies with the length limit designated by court order dated |          |.

⚪ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Aileen M. McGrath |   **Date** | 07/07/2025 |

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                        *Rev. 12/01/22*

# STATUTORY ADDENDUM

# TABLE OF CONTENTS

Federal Rule of Civil Procedure 23 ................................................................... A-1

# Federal Rule of Civil Procedure 23

## Rule 23. Class Actions

(a) PREREQUISITES. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

(b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

(c) CERTIFICATION ORDER; NOTICE TO CLASS MEMBERS; JUDGMENT; ISSUES CLASSES; SUBCLASSES.

(1) Certification Order.

(A) *Time to Issue*. At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

(B) *Defining the Class; Appointing Class Counsel*. An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).

(C) *Altering or Amending the Order*. An order that grants or denies class certification may be altered or amended before final judgment.

(2) Notice.

(A) *For (b)(1) or (b)(2) Classes*. For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.

(B) *For (b)(3) Classes*. For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

(3) *Judgment*. Whether or not favorable to the class, the judgment in a class action must:

(A) for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and

(B) for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

(4) *Particular Issues*. When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

(5) *Subclasses*. When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.

(d) CONDUCTING THE ACTION.

(1) *In General*. In conducting an action under this rule, the court may issue orders that:

(A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

(B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of:

(i) any step in the action;

(ii) the proposed extent of the judgment; or

(iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;

(C) impose conditions on the representative parties or on intervenors;

(D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

(E) deal with similar procedural matters.

(2) *Combining and Amending Orders*. An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.

(e) SETTLEMENT, VOLUNTARY DISMISSAL, OR COMPROMISE. The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) Notice to the Class.

(A) *Information That Parties Must Provide to the Court*. The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

(B) *Grounds for a Decision to Give Notice*. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

(i) approve the proposal under Rule 23(e)(2); and

(ii) certify the class for purposes of judgment on the proposal.

(2) *Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

(3) *Identifying Agreements*. The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

A-4

(4) *New Opportunity to Be Excluded*. If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) *Class-Member Objections*.

(A) *In General*. Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.

(B) *Court Approval Required for Payment in Connection with an Objection*. Unless approved by the court after a hearing, no payment or other consideration may be provided in connection with:

(i) forgoing or withdrawing an objection, or

(ii) forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal.

(C) *Procedure for Approval After an Appeal*. If approval under Rule 23(e)(5)(B) has not been obtained before an appeal is docketed in the court of appeals, the procedure of Rule 62.1 applies while the appeal remains pending.

(f) APPEALS. A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A party must file a petition for permission to appeal with the circuit clerk within 14 days after the order is entered, or within 45 days after the order is entered if any party is the United States, a United States agency, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

(g) CLASS COUNSEL.

(1) *Appointing Class Counsel*. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

(A) must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

(2) *Standard for Appointing Class Counsel*. When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.

(3) *Interim Counsel*. The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

(4) *Duty of Class Counsel*. Class counsel must fairly and adequately represent the interests of the class.

(h) ATTORNEY'S FEES AND NONTAXABLE COSTS. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system on July 7, 2025.

I certify that all participants in this case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: July 7, 2025

/s/ Aileen M. McGrath
Aileen M. McGrath

MOFO-6724857